## Warden, et al. v. Hoover's Administrator.

(Decided March 2, 1926.)

### Appeal from Ohio Circuit Court.

1. Executors and Administrators—On Showing that Estate of Distributees will Suffer Substantial Loss or will be Placed at Disadvantage, County Court should, on Proper Motion, Allow Administrator to Retire and Appoint Another (Ky. Stats., Sections 3837, 3846, 3847, 3849, 3851, 3855, 3860, 3880).—Under Ky. Statutes, sections 3837, 3846, 3847, 3849, 3851, 3855, 3860, 3880, although administrator is entitled to protection against removal without just cause, on showing that estate of distributees will suffer substantial loss, or will be placed at disadvantage in collection, settlement, and distribution thereof, or any material part thereof, county court should, on proper motion, allow administrator to settle accounts and retire, and appoint another free from disabilities.

2. Executors and Administrators—Administrator of Estate of Husband, on Showing that Husband's Estate Might be Indebted

to Wife's Estate, should be Removed as Executor of Wife's Estate (Ky. Statutes, Sections 3837, 3846, 3847, 3849-3851, 3860, 3880.—Under Ky. Statutes, sections 3837, 3846, 3849-3851, 3855, 3880, where same person was administrator of estates of both husband and wife, and there was evidence that estate of husband might be indebted to estate of wife, administrator should, on motion of interested parties, be removed from position of administrator of wife's estate.

BARNES & SMITH for appellants.

GLOVER H. CARY, ERNEST WOODWARD, A. D. KIRK and C. M. CROWE for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Reversing.

This litigation originated in the Ohio county court on a motion of appellants, William M. Warden, et al., to remove R. R. Riley, administrator of Georgia A. Hoover, deceased, from his office and trust, and to appoint another person as administrator of the estate of Mrs Hoover.. After hearing the county court entered an order removing Riley as administrator on the ground that his duties as administrator of F. M. Hoover, deceased husband of Georgia A. Hoover, deceased, to which he was first appointed, was incompatible with the discharge of similar duties as administrator of the estate of Georgia A. Hoover. The Hoovers resided at a village in Ohio county some distance from the county seat. Mrs. Hoover was Miss Warden, and that family lived at another village in Ohio county but some distance from the home of the Hoovers. The Hoovers were about eighty (80) years of age at the time of their respective deaths, and had no children. On December 5, 1923, Mrs. Hoover died, but no administrator was appointed. On the 25th day of that month the husband, F. M. Hoover, died, and on the 28th of the month appellee, R. R. Riley, was appointed administrator of the estate of F. M. Hoover, and about the same time, but perhaps not upon the same day, Riley was also appointed administrator of the estate of Georgia A. Hoover, and qualified by taking oath and executing bond in each case. Appellee is cashier of the Citizens' Bank of Hartford, and has been for many years. F. M. Hoover in his lifetime was a director of that bank and a close business associate of Riley. Before the appointment of Riley as administrator of the estate of F. M. Hoover, the next of kin of Hoover signed a writing

asking Riley to accept the trust and to qualify as admin-istrator. The order appointing Riley administrator of the estate of Georgia A. Hoover was made on the motion of Lee Warden, a brother of Mrs. Hoover, and at that time the appointment appears to have been entirely satis-factory to all the members of the Warden family. The Hoovers were well-to-do. They seem to have lived alone and to have handled considerable sums of money. From the record we learn that the estate of F. M. Hoover largely consisted of personalty and was of the value of from $40,000.00 to $50,000.00, while the estate of his wife, Mrs. Georgia A. Hoover, consisting principally of real estate, was of the value of something like $30,000.00.

This litigation was precipitated by the Wardens, next of kin of Mrs. Hoover, insisting that she had a large sum of money which had not been listed and appraised as a part of her estate, but on the contrary had been listed as a part of the estate of her husband, F. M. Hoover. This money was supposed to have been kept by Mrs. Hoover at the residence. One of the witnesses, Mrs. King, a neighbor, who was frequently at the Hoover home, while testifying as to the money and property of Mrs. Hoover, was asked:

"Q. Did she have other money? A. Yes, sir, lots of it. Q. Did you see it? A. Yes, sir. Q. Where was it when you saw it? A. Part of it was in a trunk, greater part of it. Q. When was it you saw it? A. 9th of December. Q. What became of it? A. Mr. Hoover put it in the bank. Q. Where abouts? A. He left home to go to Owensboro with it. Q. Who did he leave it with? A. Thomas Ma-haney, one time and another time Arch Moseley and Mr. King the last time, 21st day of December was the last trip he made to Owensboro. Q. That was a few days before he died? A. On Friday before he died on Tuesday. Q. What was this money in? A. In a twenty-four pound flour sack, part of it, and part of it was in a twelve-pound sack, I suppose it was twelve pounds, smaller than the twenty-four pound sack. Q. What kind of money was it? A. The money in the twenty-four pound sack was paper money except in the bottom a little silver, and the other was silver except one bill."

This witness was in part corroborated by the testi-mony of the witness Mahaney, who says that he went

with Mr. Hoover to the bank shortly after the death of the wife, and that Hoover deposited a large sum of money which he told him was the money of his dead wife. Apparently it is the contention of appellants that some $12,000.00 to $14,000.00 of money and bonds listed by the administrator as the property of F. M. Hoover was in truth and in fact a part of the estate of Mrs. Georgia A. Hoover, but this is not borne out in all respects by the record, and in fact may have little or no foundation. But there is manifestly a good faith controversy between the heirs of the wife, who are her brothers and sisters, and the heirs of the husband, his brothers and sisters.

Provision is made in section 3857, et seq., Kentucky Statutes, for the appointment and qualification of personal representatives, administrators and executors, and section 3846 provides:

"If a personal representative shall reside out of the state, or become insane, or become otherwise incapable to discharge the trust, or bankrupt, or insolvent, or in failing circumstances, the county court shall remove him, and the other representative shall discharge the trust; but if he reside in the county of his appointment, or in an adjoining county, and is not insane, he shall have ten days' notice before the order of removal is made; if insane, the notice must be given to his trustee, if he have one, and if there is no representative, the court may appoint one."

Section 3849, Kentucky Statutes, authorizes the county court to appoint three appraisers of an estate of a decedent, and section 3850 provides that the appraisement may become the inventory of the estate; section 3851 provides for the sale of the perishable part of the estate, and section 3855 requires the personal representative of a decedent to return to the county court an inventory or sale bill; and section 3860 provides that the personal representative may distribute the estate of the decedent nine months after qualification. And section 3847 provides that six months must run after the date of the qualification of the first personal representative of a decedent's estate by a court of this Commonwealth before an action shall be commenced against any executor or administrator thereof, except to settle the estate or against an executor *de son tort*. Any action brought in violation of this section must be dismissed with costs.

By section 3880, Kentucky Statutes, it is provided:

"If there be an executor or administrator of such decedent qualified by a court of this Commonwealth, he alone shall have power to sue; but any debtor who shall pay his debt, or part of it, according to the provisions of the foregoing sections, without notice thereof, shall be discharged to the extent of such payment."

It will thus be seen that it is made the duty of the administrator of the estate of a deceased person to institute and prosecute actions on behalf of the estate for the recovery of any property or money belonging to the estate; and it would seem from the language of the statutes that the administrator alone shall have power to sue in such cases. In the instant case appellee, Riley, who appears to be a man of high standing in his community, and in every way qualified to perform the duties of an administrator, is placed in an awkward and unsatisfactory situation by the fact that he is administrator for the two estates of F. M. Hoover and Georgia A. Hoover, between which estates there is controversy. The heirs of the wife insist that the estate of the husband is largely indebted to the estate of the wife, and that the administrator of the estate of the wife should by proper proceeding either as administrator of the two estates or by action in court, recover property and funds from the estate of the husband into the estate of the wife. Clearly it appears to be the duty of the administrator in a case like this to begin and maintain such action if such action be necessary. But it would be a singular and unenviable position if appellee, Riley, as administrator of the wife, should be required to bring an action against himself as administrator of the estate of the husband. Upon the evidence presented it is doubtful whether the administrator would be authorized to take any of the money from deposits in bank to the credit of the husband and transfer it to the credit of the wife without an order or judgment of a court of competent jurisdiction, and if he does not do so the next of kin of the wife, who are now impugning his motives, will be compelled, they say, to institute legal proceedings to accomplish that end, or forever abandon their claims which, to all appearances, are asserted in good faith, and this they should not be compelled to do. It, therefore, appears that the duties of appellee, Riley, as administrator of the estate of F. M. Hoover, to which office he was first ap-

pointed, are incompatible with the exercise of the duties of the office of administrator of the estate of the wife. It is true that we have recognized the principle that an administrator has such an interest in the execution of a trust as entitles him to protection from removal without just cause. Trevathan v. Grogan, et al., 210 Ky. 694; Dunlap v. Kennedy, 10 Bush 539. But it has never been held, so far as we know, that the interest of the administrator in the trust is paramount to the interest of the estate and distributees. When, therefore, it becomes manifest that the estate or the distributees will suffer substantial loss or be otherwise placed at disadvantage in the collection, settlement and distribution of the estate, or any material part thereof, the county court should upon proper motion, these facts being clearly manifest, allow the administrator to settle his accounts and retire, and appoint another who is free from the disabilities disqualifying the first, to the end that the estate may be fairly, speedily and judiciously administered and settled. The circuit court upon appeal from the order of the county court, removing appellee, Riley, as administrator, took the view that no good reason had been shown for the removal of Riley as administrator, and reversed the judgment of the county court with directions to set aside the order of removal and to allow appellee, Riley, to continue as administrator. In this the circuit court was in error. Manifestly, the estate of Georgia A. Hoover, under the facts and circumstances presented, is at a great disadvantage in the prosecution of its claims against the estate of F. M. Hoover to the money and personal property which the next of kin of Mrs. Hoover asserted were wrongfully listed as assets of the estate of F. M. Hoover, though actually belonging to the estate of Mrs. Hoover.

For the reasons indicated, the judgment is reversed for proceedings consistent with this opinion.

Judgment reversed.