## Zinn's Administrator v. Brown, et al.

(Decided October 19, 1928.)

Appeal from Grant Circuit Court.

Executors and Administrators.—Where heir, appointed administrator, attempted to deceive his coheirs into belief that they should sign writing whereby he and his son would receive three-fifths of estate, and that the other two-fifths was a sum equal to that amount, when facts within his knowledge did not sustain that statement, he was properly removed as administrator, under Ky. Stats., sec. 3846, on ground that he was "otherwise incapable to discharge the trust."

B. F. MENEFEE for appellant.

L. M. ACKMAN and C. C. ADAMS for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

In the latter part of April, 1926, Dr. W. J. Zinn died intestate and a resident of Grant county. He was about 94 years of age and a bachelor. He resided on a small farm, containing about 55 acres, distanced some 5 or 6 miles from Williamstown, the county seat of the county. His only heirs were some nieces and nephews, or descendants of any of them who may have died. Under our inheritance statute (Ky. Stats. secs. 4281a1 et seq.) the estate would be divided into five parts, each part being represented by a deceased brother or sister of decedent. Dr. J. L. Price was one of four children of a deceased sister, thereby making him heir to a one-twentieth of the estate of Dr. Zinn. The other heirs were scattered throughout the country, there being but a small number of them living in or near to Grant county.

In 1887 Mrs. S. A. Jones and her then husband (they having no children) took up their abode in the residence of Dr. Zinn, and Mrs. Jones became the house-

keeper in that residence. About two years thereafter her husband died, with no children having been born to him and his wife. The latter continued to live in the Zinn residence and to perform, as long as she was physically able, the duties of housekeeper. At the time of the death of Dr. Zinn, Mrs. Jones was 84 years of age and an invalid, and had been so for more than 10 years, and as a result of her infirmities she died testate in August following the death of Dr. Zinn. A few days after the death of the doctor, and, of course, while Mrs. Jones was yet alive, the appellant and defendant below, Dr. J. L. Price, who, as we have seen, was one of the heirs of Dr. Zinn (a nephew), prepared a paper for the signature of all his heirs, and which was and is in these words:

"We, the undersigned, heirs of the late Dr. W. J. Zinn, herewith agree that the last wishes and request of the said late Dr. W. J. Zinn, as expressed by him just previous to his death, be carried out— that is, that Zinn Price shall have the $10,000 United States bond; that Mrs. Nellie Dunlap shall have $1,000 in cash; that Dr. J. L. Price shall have the farm of 56 acres, and after the death of Mrs. S. A. Jones, and assume the responsibility and support and care of Mrs. S. A. Jones, his faithful housekeeper for the last 40 years, and the remainder of the estate shall be divided equally among his other five sets of heirs; that we will sign deed to said farm as soon as the legal formalities can be arranged, and that Dr. J. L. Price shall take charge of the affairs and settle up the affairs as speedily as possible."

He then presented it for signature to a number of the other heirs of Dr. Zinn, and represented to them that, unless they signed it, the estate of the deceased would be practically consumed by a claim of Mrs. Jones, growing out of her services as housekeeper for him for a period of 39 years, and that he (appellant) was a witness to the contract between Mr. and Mrs. Jones, on the one part, and Dr. Zinn, on the other, upon which the claim of Mrs. Jones rested, and which was to the effect that, if Mrs. Jones would continue to live in the residence of the deceased and keep house for him till his death, he would make a will and give her an amount equal to a widow's dower interest in his entire estate. He furthermore rep-

resented that he was the only living witness to that contract, except Mrs. Jones, who, under, section 606 of our Civil Code of Practice would be incompetent to testify, but that appellant's mother who was dead also witnessed the contract. He also represented to the heirs, in presenting to them his prepared paper for their signature, that nearly one-half of the personal property of which deceased died the owner consisted of a United States Liberty bond of the par value of $10,000, and that the deceased had given it to the son of the defendant and appellant, by declaring himself (deceased) the trustee for appellant's son in such manner as to make the transaction enforceable in law, and for that reason he had stipulated in the writing for his son to have that bond. He furthermore represented at the same time that there would be left of the estate of Dr. Zinn, after complying with the terms of the writing at least $15,000 to be distributed among his heirs, and that the decedent had executed a will that had not been found, but in all probability would be, and which was, in substance and effect, the same as the writing he had prepared for them to sign; but no will was ever found.

He also told those whose signatures he sought to that writing that Mrs. Jones was going to assert a claim against the estate of Dr. Zinn to the amount of at least $20,000, and which would consume practically all of the personal property left by the deceased, unless they would sign the writing, and that the reason why she was willing to accept its terms, so far as applicable to herself, was that Dr. Zinn, a few days before his death, had told her that he wanted her to live in his residence and have the use of it throughout her life, and for appellant to have the farm after her death, and for his son, Zinn Price, to have the $10,000 Liberty bond, and that she was willing to forego the collection of her large $20,000 claim in order to carry out the wishes of the deceased; but that, if the heirs would not so agree, and the wishes of the deceased thereby be thwarted, she would vigorously assert her claim, with appellant as her sole and only witness. He also at the same time made a most touching appeal for the heirs to sign the writing, in order to save the great cost of litigation, as well as a development of the scandal of Mrs. Jones living with Dr. Zinn as his common-law wife.

Some of the heirs, all of whom were ignorant of the extent and character of Dr. Zinn's estate, were persuaded to sign the writing; but Dr. Julian Zinn, a cousin of appellant, and who resided in the state of Illinois, declined to do so, notwithstanding appellant wrote a number of letters to him containing, in substance, the statements and appeals we have above recited. After the effort to settle the estate in accordance with terms proposed became abortive, appellant on his own motion was appointed administrator of the estate of Dr. Zinn. Directly thereafter he participated in an arrangement for Mrs. Jones to execute her will, she at the time having at least one foot and a half in the grave. It was dated May 8, 1926, and in it she devised to appellant her stock in the Union Bank of Berry, Ky., and $1,000 to Fanny May Moore; and all the rest of her estate, of whatever character, she devised to the son of appellant, Zinn O'Hara Price, which, of course, carried to him whatever claim that she or her personal representative might succeed in recovering from the estate of Dr. Zinn. The appellant was named as executor of that will, and on the 13th day of September, being only a few days after the death of Mrs. Jones, he probated it and qualified as such executor.

But on the second day thereafter (September 15, 1926) this proceeding was started by the other heirs of Dr. Zinn, serving notice on appellant that they would on a day named therein move the county court to remove him as personal representative of Dr. Zinn's estate. Within three days thereafter he resigned as executor of Mrs. Jones, followed by the appointment of one of his friends as executor with the will annexed, and who has since then taken legal steps to assert a claim against the Zinn estate in favor of the Jones estate in accordance with the terms of the alleged contract and to which appellant claims to have been a witness.

Both the county court and the circuit court, to which appellant appealed, sustained the motion and removed him as personal representative of the Zinn estate, and from the judgment of the latter court he prosecutes this appeal. The motion is bottomed on the provisions of section 3846 of our present Statutes, which authorizes such removal, "if a personal representative shall reside out of the state, or become insane, or become otherwise incapable to discharge the trust." It is upon the latter

ground, "otherwise incapable to discharge the trust," that the removal is sought.

It is insisted by counsel for appellant that an administrator or other personal representative has such an interest in the execution of the trust as entitles him to protection from removal without cause, as was held by us in the case of Ex parte Williams' Adm'r, 158 Ky. 61, 164 S. W. 307, Davis' Adm'r v. Davis, 162 Ky. 316, 172 S. W. 665, Rieke's Adm'r v. Rieke, 183 Ky. 131, 208 S. W. 764, and Trevathan v. Grogan, 210 Ky. 694, 276 S. W. 556; and it is insisted that the facts herein did not show sufficient cause, nor did they render appellant incapable to discharge the trust, as is required by the statute supra. But a mere casual reading of our opinions in those cases will show that there is a wide gulf separating the facts in them from those appearing in this one. In the first cited one there was no cause whatever shown, except a misapprehension of the county judge as to his right to appoint a stranger to the estate at the particular time he did so. In the others the personal representative was either a creditor, a devisee, or the claimant by alleged gift to some portion of the decedent's estate, and it was held that such facts alone were not sufficient, in and of themselves, to destroy the interest of the personal representative in the execution of his trust, or to render him incapable to discharge it. There was no fact appearing in any of those cases to show such an antagonistic position by the representative to the trust as to consume the entire estate, if his assumed position should prevail; nor did anything appear in either of them to show that the representative whose removal was sought was the moving spirit in an effort to convert the entire estate to his own use and to the use of a member of his family.

The appellant's course, under the evidence in this case, most convincingly shows that from the beginning he attempted to deceive his coheirs of Dr. Zinn's estate into the belief that the proper thing to do was for them to sign a writing whereby he and his son received three-fifths of the estate, and that the other two-fifths was a sum equal to that amount, when the facts within his knowledge did not sustain that statement. When he failed in that effort, he then set about to create a scheme whereby his son would eventually become the owner of all the personal property left by Dr. Zinn, and the means by which that scheme was put into operation was the will

of Mrs. Jones, wherein she made both appellant and his son devisees; the latter being the principal and chief one. It is also not to be overlooked that, if Mrs. Jones' representative should fail to recover all of the claim asserted against the Zinn estate, or should be defeated entirely in that effort, the appellant is the only witness to establish the alleged trust in favor of his son as the owner of the $10,000 Liberty bond.

The facts of this case are in some respects similar to those prevailing in the case of Warden v. Hoover's Adm'r 214 Ky. 370, 283 S. W. 444, except that in this case they more strongly support the judgment of removal than was true in the Warden case; so much so that we conclude that, if the facts of this case do not create the ground for removal upon which the motion is based, then it would be difficult to imagine a state of facts that would do so.

It results, therefore, that both courts properly sustained the motion, and the judgment of the circuit court, from which this appeal is prosecuted, is affirmed.