## Price's Adm'r v. Price et al.

June 19, 1942.

Vernon Shuffett and T. P. Noggle for appellant.

O. B. Bertram and L. M. Henderson for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

D. W. Price died intestate a citizen and resident of Green County on January 26, 1941. He was then near 80 years of age and owned and resided upon a farm containing about 130 acres but which is not involved in this litigation. His first wife died in 1931 (the date not shown in the record). Of that marriage 9 children were born. The appellant, B. E. Price, the oldest of them was 57 years of age at the time he gave his deposition in this case. The others had long since arrived at adult age and married and moved away from their parental home. The next year following the death of his first wife, decedent married the defendant, Gladys Price, who was some 50 years his junior. In September after that marriage the appellee left the deceased and went to her parental home in the same neighborhood. On the 19th of that month she filed an action in the Green Circuit Court seeking a divorce and alimony from her husband, the deceased D. W. Price. In aid of her prospective alimony she procured an attachment and had it served on Greensburg Deposit Bank as garnishee.

On the same day (presumably after the divorce action was filed) the deceased and appellant (his oldest child and son of his first marriage) went to that bank and deceased there made a transfer to his accompanying son of some time deposit certificates which had been issued to him by the bank, in the aggregate amount of $5,500, which was done without the knowledge of his second wife who had filed the divorce action against him; also according to her evidence without any knowledge on her part that her husband possessed any such certificates, although he had told her that he owned and possessed as much as $6,000 in personal property. There was no writing executed at the time, save and except the endorsement of the deposit certificates by the deceased.

The deposition of appellant was taken by counsel for appellee as if on cross-examination, and he stated that his father consulted with him about the transfer before it was made and of his intention to make it, with the proviso that appellant, the son, should hold the title in trust with power to collect the interest from the bank when due and pay it to the deceased as long as he lived,. and upon his death to divide the entire fund amongst the nine children of deceased by his first wife, which of course included appellant.

The divorce action of appellee was never tried and in March 1933 she returned to the home of her husband and resumed her relationship of wife, which she continued to occupy until her husband's death. In the interim between appellee's return (following the dismissal of her divorce action and the death of deceased) two children were born, one of them being 6 years of age and the other 16 months of age at the time of their father's death. A day or so before the death of deceased the appellant as his oldest child approached appellee and stated to her that he being the oldest child was preferred by the law for the appointment as personal representative of his father's estate after the death of the latter. The widow was both young and, of course, ignorant of the law and she accepted that statement as being correct. On the next day, following the death of deceased, appellant presented to his step-mother a prepared typewritten relinquishment of her right to qualify as personal representative of her deceased husband and consenting to the appointment of her step-son, the appellant, which was in accordance with his prior representation made to her before his father's death. Almost immediately following the burial of deceased appellant was appointed personal representative of the estate of his father and at the time appraisers were appointed to make an inventory of personal property left by deceased, which they did, and included therein—with the consent of appellant—the $5,500 amount of transferred certificates as belonging to the estate of the deceased, and which appraisement was approved by appellant and filed in the county court. The aggregate amount of the appraisement, including the item referred to, was $7,110.95.

Within less than a month after that appraisement was made out and filed, appellant, as administrator and in his individual behalf, procured to be prepared an-

other appraisement omitting entirely the time deposit certificates referred. He then carried it to each of the appraisers separately and apart from the others and procured them (by representing that a mistake was made in the first appraisement) to subscribe the later prepared one which he substituted for the first one by filing it in the Green County Court. When it was thus manifested that appellant had assumed such antagonistic position toward the estate which he represented, appellee as decedent's widow entered motion in the Green County Court to have him removed as such fiduciary and another disinterested person appointed in his place, upon the grounds that appellant as the reigning administrator had conspired with his father to defraud movant as his widow of her distributable share in her deceased husband's estate, and that in that transaction he became partly vested with the title to the property in which the widow and her children were entitled to share and thereby assumed an antagonistic position to the estate represented by him, all of which, it was alleged, disqualified him from continuing as such fiduciary. On the trial of that motion the county court overruled it, from which order the widow prosecuted an appeal to the Green Circuit Court and at the hearing thereof the judge of that court overruled the county court and directed it to sustain the motion and remove appellant as administrator of his father's estate and to then appoint another disinterested person in his stead. From that judgment appellant prosecutes this appeal.

Section 3846 of Baldwin's 1936 Revision of Carroll's Kentucky Statutes prescribes for the removal of a personal representative for any of the reasons stated therein, one of which is his being or becoming "incapable to discharge the trust," which we in a number of opinions have interpreted as embracing the facts of this case, whereby the personal representative is asserting "an adverse, incompatible and hostile interest in himself to that of the estate such as to show he was incapable of discharging the trust." Barnett's Administrator v. Pittman, 282 Ky. 162, 137 S. W. (2d) 1098, 1100. Likewise in the case of Hunt v. Crocker, 246 Ky. 338, 55 S. W. (2d) 20, we expressed similar views upon a similar state of facts. Cf. also the cases of Warden v. Hoover's Administrator, 214 Ky. 370, 283 S. W. 444, and Zinn's Administrator v. Brown, 225 Ky. 814, 10 S. W. (2d) 300. The learned trial judge filed an opinion in this case and after

citing the cases to which we have referred he differentiated them from the case of Trevathan v. Grogan et al., 210 Ky. 694, 276 S. W. 556, wherein the personal representative was an executor named by the testator in his will. There were other facts differentiating that case from those first cited above.

In brief for appellant filed by his counsel in this court the only questions discussed relate to: (a) gifts; (b) the power and authority of the proper court to remove the personal representative; and (c) the right of the deceased spouse to make advances to any of his surviving children—none of which questions may be appropriately determined in a procedure of this kind but only in an action for a settlement of the estate to which all interested persons are parties. A personal representative is supposed to represent the estate of his decedent. If he assumes an adverse or antagonistic position towards the trust fund by himself claiming to own a part of it—or what it is contended is a part of it—thereby diminishing its supposed corpus, to the detriment of others having an interest therein, the opinions, supra, declare that he thereby becomes incapable of discharging the trust, and because of which he may be removed upon the proof of such facts. To say the least of it the personal representative in such situations—as said in the case of Warden v. Hoover, supra—[214 Ky. 370, 283 S. W. 446] is made to occupy "an awkward and unsatisfactory situation," since, if his contention is upheld, it would result in reducing his decedent's estate to the detriment of others entitled to share in it. Where such contentions are made the personal representative should occupy a strictly neutral position and be in an attitude to advocate and obtain justice to all parties, and not be influenced by seeking to assert an adverse claim in favor of himself.

For the reasons stated we are clearly of the opinion that the Green Circuit Court properly adjudged that appellant should be removed from his present fiduciary position as representative of his father's estate and that the county court should appoint another disinterested one in his place. Wherefore the judgment is affirmed.