## Carpenter et al. v. Planck.

May 2, 1947.

Donald L. Wood, Judge.

O. R. Bright and Lander Bright for appellants.

B. S. Grannis and C. W. Fulton for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

S. B. Planck and his wife, Mary E. Planck, owned and occupied a residence in Flemingsburg, Kentucky, each of them owning the title to a one-half undivided interest therein. The husband died several years ago intestate, and his personal estate was administered without the appointment of an administrator. The wife, Mary E. Planck, died intestate August 1, 1946, at the age of 93 years. She left no surviving child except appellee, M. B. Planck, who is married. He and his wife occupied the residence of his parents as members of one family. The only two children ever born to appellee and his wife are dead, leaving no issue. All of the children of S. B. and Mary E. Planck, except appellee,

were dead at the time of the death of Mary E. Planck, and none of them left issue surviving them, except Julia Planck, the daughter of decedent, her surviving children being the appellants here.

After the death of Mary E. Planck her only surviving child, appellee M. B. Planck, applied for and was granted letters of administration of the estate of his mother, her estate consisting chiefly, and practically entirely (with the exception of some antiques to be hereinafter mentioned and some minor articles of personal property which appellee testified in this case were not worth in the aggregate exceeding $20) of her one-half undivided interest in the residence and lot upon which it stood. Following decedent's death it was sold by agreement of her heirs at public auction for the sum of $8,220.

After the appointment of appellee as administrator' of the estate of his mother he employed to direct and assist him as such fiduciary, C. W. Fulton and B. F. Grannis, practicing attorneys of the Flemingsburg Bar. Soon thereafter appellee's wife filed an action in the Fleming circuit court against her husband as administrator of his mother's estate to recover the sum of $4,000 alleged to be due for nursing services which she rendered to her mother-in-law before her death. In the meantime appellee as such administrator filed a list of the articles which he said constituted the entire personal property of his mother, but he fixed no price on any of those articles, nor did he include therein some antique furniture which he says his mother gave him before her death, with the exception of one piece which he says his aunt, his mother's sister, gave him.

The attorneys who filed the action of appellee's wife were the same attorneys whom he had employed to guide and direct him in discharging his fiduciary duties as administrator. One-half of the proceeds of the house and lot which the heirs sold by mutual agreement is $4,110 which, if the claim of plaintiff's wife is allowed in full, the balance of $110 will scarcely pay the cost of administration. It will thus be seen that appellee and his wife are seeking to appropriate to themselves the entire estate of his mother, leaving nothing to be distributed

among the appellants who in the aggregate are entitled to receive one-half of their grandmother's estate.

In that situation on December 2, 1946, appellants, after due notice was given to appellee, moved the county court of Fleming County to remove him as administrator of his mother's estate and to appoint another who would primarily serve the interests of the estate for the benefit of decedent's heirs, and who did not occupy such an antagonistic position of seeking to appropriate the whole of the estate for the benefit of himself and his wife. The county court overruled that motion, followed by an appeal by appellants to the Fleming circuit court, at the hearing of which appellee gave his deposition and testified, inter alia, that he himself was the owner of the antique furniture as hereinbefore stated, and he also testified that the claim of his wife, as asserted in her action against him in his fiduciary capacity, was a just one and that she was entitled to recover the amount she claimed. Nevertheless the circuit court also overruled the motion of appellants, and to reverse that judgment they prosecute this appeal.

Section 395.160, KRS is the same as sec. 3846 of Carroll's Kentucky Statutes, and the pertinent part of it applicable to the facts of this case says: "If a personal representative resides out of the state, becomes insane or *otherwise* incapable to discharge the trust, goes bankrupt or insolvent or is in failing circumstances, the county court shall remove him, * * *." (Our emphasis) The only difference between that language as appearing in KRS and, as appearing in Carroll's Statutes is that the latter has a comma immediately following the word "insane," thereby creating a distinct ground for removal as expressed by the language "or otherwise incapable to discharge the trust," while KRS has omitted the comma at the place designated.

In the case of Hunt v. Crocker, 246 Ky. 338, 55 S. W. 2d 20, 21, we held under a similar state of facts that they (the facts) "clearly established that he (administrator) was utterly *incapable of discharging the trust* with that degree of fairness which the law requires of an unbiased administrator," (our parenthesis and emphasis) thereby determining that the language of the statute saying "incapable to discharge the trust" was

an independent ground for the removal of the administrator. In that case the administrator, Crocker, collected an insurance policy on the life of his decedent amounting to $1,322 and asserted claim to that amount in himself, which was the chief ground upon which this court directed his removal which the circuit court refused to do.

In the case of Price's Adm'r v. Price, 291 Ky. 211, 163 S. W. 2d 463, 465, B. E. Price was appointed as administrator of the estate of his deceased father, D. W. Price. A part of the estate of his decedent was a deposit account in a bank amounting to $5,500, and the administrator, after his appointment, claimed that his father before his death transferred the deposit certficate to him in trust upon terms which deprived the father of title to that item as a part of his estate, thereby depriving his surviving widow of any interest therein. The latter, after such a claim was made by the administrator, sought his removal from his fiduciary position, which motion the county court of Green County overruled, but on appeal to the circuit court that judgment was reversed which we affirmed on appeal to this court. In the course of that opinion it is said:

"Section 3846 of Baldwin's 1936 Revision of Carroll's Kentucky Statutes prescribes for the removal of a personal representative for any of the reasons stated therein, one of which is his being or becoming 'incapable to discharge the trust,' which we in a number of opinions have interpreted as embracing the facts of this case, whereby the personal representative is asserting 'an adverse, incompatible and hostile interest in himself to that of the estate such as to show he was incapable of discharging the trust.' Barnett's Administrator v. Pittman, 282 Ky. 162, 137 S. W. 2d 1098, 1100. Likewise in the case of Hunt v. Crocker, 246 Ky. 338, 55 S. W. 2d 20, we expressed similar views upon a similar state of facts. Cf. also the cases of Warden v. Hoover's Administrator, 214 Ky. 370, 283 S. W. 444, and Zinn's Administrator v. Brown, 225 Ky. 814, 10 S. W. 2d 300."

In the case of Warden v. Hoover's Adm'r. supra (214 Ky. 370, 283 S. W. 445), one R. R. Riley was appointed administrator of Georgia A. Hoover, the wife of

F. M. Hoover. Mrs. Hoover died December 5, 1923, followed by her husband's death twenty days thereafter. Three days after his death Riley was appointed administrator of F. M. Hoover's estate. The Hoovers left surviving them no issue, but each of them were survived by next of kin and collateral heirs. As administrator of the wife Riley refused to list as a part of her estate a considerable sum of money amounting to as much as $12,000, or possibly more, which the heirs of the wife claimed was a part of her estate and not that of her husband, thus creating an antagonistic position of the administrator of each estate in the final settlements of them. The next of kin of the wife, because of such antagonistic interest, moved the county court to remove Riley on the ground that the situation produced the statutory ground of his being "(unable) to discharge the trust." The county court sustained that motion, but on appeal to the Ohio circuit court it reversed the county court and overruled the motion, from which movants prosecuted an appeal to this court. After citing some cases herein relied on by appellee's counsel, to the effect that a bona fide liquidated claim of the administrator against his decedent's estate is not necessarily a ground for his removal, this court in reversing the circuit court said:

"But it has never been held, so far as we know, that the interest of the administrator in the trust is paramount to the interest of the estate and distributees. When, therefore, it becomes manifest that the estate or the distributees will suffer substantial loss, or be otherwise placed at disadvantage in the collection, settlement, and distribution of the estate, or any material part thereof, the county court should, upon proper motion, these facts being clearly manifest, allow the administrator to settle his accounts and retire, and to appoint another who is free from the disabilities disqualifying the first, to the end that the estate may be fairly, speedily, and judiciously administered and settled."

An administrator or executor of an estate occupies a position closely akin and analogous to that of a trustee of a trust for the benefit of the cestuis que trustent.

Chief Justice Cardozo of the New York Court of Appeals, in the case of Meinhard v. Salmon et al., 249

N. Y. 458, 164 N. E. 545, 546, 62 A. L. R. 1, had before him the duties of one occupying the position of trustee or fiduciary for the benefit of others. The precise relationship of the fiduciary in that case was not identical with the one presented here, but there was involved therein the same principle of law applicable to all fiduciaries. In the course of the opinion the learned judge said:

"Joint adventurers, like copartners, owe to one another, while the enterprise continues, the duty of the finest loyalty. Many forms of conduct permissible in a workaday world for those acting at arm's length, are forbidden to those bound by fiduciary ties. A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctillio of an honor the most sensitive, is then the standard of behavior. As to this there has developed a tradition that is unbending and inveterate. Uncompromising rigidity has been the attitude of courts of equity when petitioned to undermine the rule of undivided loyalty by the 'disintegrating erosion' of particular exceptions. Wendt v. Fischer, 243 N. Y. 439, 444, 154 N. E. 303. Only thus has the level of conduct for fiduciaries been kept at a level higher than that trodden by the crowd. It will not consciously be lowered by any judgment of this court." So say we. Also see to the same effect the case of Re Estate of Elder, 160 Or. 111, 83 P. 2d 477, 119 A. L. R. 302, and annotations thereto in the ALR volume, and our late case of Karsner's Ex'r v. Monterey Christian Church, 304 Ky. 269, 200 S. W. 2d 474.

In view of the cited authorities and others listed therein we have no hesitancy in concluding that the orders of both the Fleming County Court, and its circuit court, were erroneous and that each of them should have sustained appellants' motion to remove appellee as the administrator of his mother's estate, on the ground that the facts supra authorized his removal under the statutory section referred to because his duties were so conflicting as to render him "incapable to discharge the trust." The appellee in this case, as shown by the admitted facts, sought to appropriate to himself and wife his decedent's entire estate by abandoning altogether his primary and first duty to protect and

preserve the estate for the benefit of all the heirs of his decedent. If such an assumed attitude on his part would not render him "incapable of discharging the trust" it would be difficult to imagine a case that would.

Wherefore, the judgment is reversed with directions to set it aside and render one consistent with this opinion.